IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMRON INTERNATIONAL DIVING SUPPLY, INC., | ) ) ) | NO. 5:12-MC-1189-DAE |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| HYDROLINX DIVING COMMUNICATION, INC. AND SAAD SADIK, a/k/a Todd Sadik, a/k/a John Sadik, a/k/a Dalea Estephan, a/k/a Stephen Morales, a/k/a Frank Jashua, an individual, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING MOTION FOR LEVY OF EXECUTION AND ORDER OF
SALE OF REAL PROPERTY

On April 24, 2014, the Court heard oral argument on a Motion for

Levy of Execution and Order of Sale of Real Property filed by Plaintiff Amron

International Diving Supply, Inc. ("Amron").  ("Mot.," Dkt. # 4.)  Jacquelyn

McAnelly, Esq., represented Amron.  Defendant Hydrolinx Diving

Communication, Inc., a/k/a Saad Sadik ("Sadik") did not appear.  For the reasons

that follow, the Court **GRANTS** Plaintiff's Motion.

1

BACKGROUND

On September 13, 2012, Amron obtained a Judgment in the amount of $1,939,569.64 against Defendant Hydrolinx Diving Communication a/k/a Saad Sadik in the United States District Court for the Southern District of California. (Dkt. # 4, Ex. 1.)  Amron registered the Judgment in this Court on January 11, 2013.  (Dkt. # 3 at 1–2; Dkt. # 4, Ex. 2 at 1–2.)  Amron also recorded the judgment in the Real Property Record of Bexar County, Texas.  (Dkt. # 3 at 3; Dkt. # 4, Ex. 2 at 3.)

Defendant Sadik has not made any payments on the Judgment. ("Ritchie Decl.," Dkt. # 4, Ex. 3 ¶ 4.)  Amron has, however, recovered against the Judgment in the amount of $375,210.98, which has been applied as an offset to the Judgment.  (Id.)  At the hearing, counsel for Amron averred that Amron will be receiving another offset of approximately $173,000.   According to Amron, all sums, save for the two offsets, remain due and owing on the Judgment.  (Id.)

Sadik owns real property located in the Western District of Texas at 3543 Sage Meadow, San Antonio, Texas (the "Sage Meadow Property").  At one point, Sadik attempted to transfer the property to an unincorporated entity, MMR Future, Inc.  On May 8, 2013, Amron obtained a default judgment in the 407th Judicial District Court in Bexar County, Texas, voiding the transfer and reverting ownership back to Sadik for later execution by Amron.  (Dkt. # 4, Ex. 4 at 1–2.)

2

After the transfer was voided, Amron made multiple attempts to personally serve Sadik with the Writ of Execution for a Money Demand issued by the Clerk of Court for the Southern District of California.   Amron attempted to personally serve Sadik with such Writ of Execution for a Money Demand pursuant to the U.S. Marshals Service policy, which provides for two processes for Writs of Execution:

RE: UNITED STATES MARSHALS SERVICE
REQUIREMENTS FOR WRITS OF EXECUTION

The following guidelines are provided to assist your law firm and the United States Marshals Service (USMS) with information for service of Writs of Execution in a prompt, cost-effective manner. . . .

Writs of Execution are handled in two manners in our office: Money Demands and actual Seizure of Assets.

Money Demands

Money Demands are the simple[r] of the two methods.  During a money demand, a Deputy U.S. Marshal (DUSM) will personally serve the defendant with the writ [of execution] and make a demand for payment.  If payment is not tendered, the DUSM will advise the debtor that their assets are subject to seizure and will further encourage the debtor to make arrangements with the law firm to make payment.  The DUSM will execute the writ annotating his/her actions taken and the response of the defendant.

. . . .

Seizure of Assets

Generally the seizure of assets is a last resort to other collection efforts, i.e., writs of garnishment, money demands etc.  The items listed below lay the foundation for having assets seized.

3

1.      The law firm must identify the non-exempt assets available for seizure by use of an investigator, deposition, etc.  The law firm must provide the USMS, in writing, the location of the assets and the type of assets targeted for seizure.  This allows the USMS to determine staff needs, the amount of hours required, and the date the execution can be carried out based on USMS workload.

2.      The law firm is responsible for conducting title searches on any real property subject to the judgment and Writ of Execution.  A copy of the title search must be provided to USMS.

3.      The law firm must provide a list of all known lienholders and their last known address.  The USMS will mail the Notice of Levy and Notice of Sale to all lienholders identified on their list.

4.      An attorney from the law firm must be present at the execution to identify leviable assets, thus avoiding confusion regarding the descriptions of the non-exempt assets.  The USMS, with the law firm's assistance, will prepare an itemized list of the assets seized and provide one (1) copy to the debtor and one (1) copy to the law firm.  A copy will be returned to the Court, and the USMS will retain the original.

5.      Pursuant to 28 U.S.C. § 1921, a deposit for mileage, cost per service, out of pocket expenses, publications, commissions, and deputy hours, must be provided to the USMS prior to executing the seizure.  The law firm must provide an indemnity agreement to the USMS with the deposit.

6.      The USMS will need two (2) certified copies of the Writ of Execution and two (2) certified copies of the Judicial Order for the Clerk of the Court to issue the Writ of Execution.  These documents shall be attached to a completed USM-285, Process Receipt and Return form, which can be obtained from our office.

7.     Seizures involving personal property will require the law firm to make arrangements for the transportation, storage, and insurance/bonding/security of the items seized until they have been sold.  The law firm must provide the USMS with written proof of adequate insurance. The law firm, or their designee, will be appointed substitute custodian by the USMS.

8.     The law firm is responsible for obtaining an independent appraisal of the items to be sold.  The appraisal should be performed by someone qualified to give a professional opinion.

9.     The law firm is responsible for preparing the Notice of Levy and Notice of Sale and coordinating a sales date and plan with the USMS.  Samples of these notices are available from the USMS.

10.    At the time of disposal, the USMS will maintain a record of bidders and the price of items sold at the sale.  A copy of these items will be provided to the law firm requesting the sale.

(Dkt. # 4, Ex. 8.)  According to Amron, the U.S. Marshals Service will not attempt a Writ of Execution for Seizure of Assets until a Writ of Execution for Money Demand has been personally served on a defendant.  (Mot. ¶¶ 11, 13, 15.)

Amron first contacted the U.S. Marshals Service in California to personally serve Sadik with a Writ of Execution for Money Demand on August 16, 2013, at his home address, located at 1515 Providence Drive, Vista, California 92801.  (Dkt. # 4, Ex. 6.)  The return notes revealed that at 7:14 p.m., no one was home, and when service was attempted again at 8:10 p.m., the Deputy Marshal

spoke with a neighbor, Deborah Williams, who informed the Deputy that Sadik

had moved away a month before due to financial problems and he did not leave a

forwarding address.[1]  (Id.)

> Second, on August 22, 2013, the U.S. Marshals Service in California

attempted to serve Sadik at his last known place of employment at Esterline

Palomar Products, Inc., located at 23042 Arroyo Vista, Rancho Santa Margarita,

California 92688, but was unsuccessful.  (Dkt. # 6, Ex. 7.)  According to the

Human Resources Manager at Esterline, Sadik's employment was terminated

several months earlier on June 1, 2013.  (Id.)

> On October 2, 2013, Amron further conducted an investigation

through a private investigator, but was unable to locate any new information about

Sadik's whereabouts.

> Two months later in December 2013, Amron again attempted to

locate Sadik and uncovered two other addresses where he might be found: (1) 500

S. Ranch Santa Fe Road, Apartment 117, San Marcos, California 92078 (the "San

Marcos Property") and (2) 3543 Sage Meadow, San Antonio, Texas 78222 (the

"Sage Meadow Property").  (Dkt. # 4, Ex. 10.)  Amron later contacted a process

server who attempted to personally serve Sadik with the Writ of Execution at the

---

[1] Amron later contracted Coast Appraisal, Inc., to perform an appraisal on the
property on September 11, 2013, which revealed that the home had been
abandoned.  (Dkt. # 4, Ex. 9.)  Photos of the abandoned property are attached to
Amron's Motion.  (See Dkt. # 4, Ex. 9-A.)

San Marcos Property, but was unsuccessful.  (Dkt. # 6, Ex. A.)  The process server

noted, however, that Sadik's father lived at the property.  (Id.)  Sadik's father

stated that Sadik had been on vacation for four months, he did not know where

Sadik was, and did not have any contact information for Sadik.  (Id.)  Amron also

contacted another process server to attempt to personally serve Sadik at the Sage

Meadow Property, but again to no avail.  (Dkt. # 6, Ex. B.)  The process server

noted that the Sage Meadow home was noticeably vacant and had notices from the

City of San Antonio claiming the property was abandoned.  (Id.)

On February 10, 2014, Amron filed the Motion for Levy of Execution

and Order of Sale of Real Property that is now before the Court.

<u>DISCUSSION</u>

Amron seeks an order from this Court directing the U.S. Marshals

Service to issue a Writ of Execution for Seizure of Assets on the Sage Meadow

Property without having to personally serve a Writ of Execution for Money

Judgment on Sadik.  (Mot. ¶ 15.)  Therefore, the issue for this Court to determine

is whether the U.S. Marshals Service must personally serve a Writ of Execution for

Money Judgment on Sadik before serving a Writ of Execution for Seizure of

Property.

Under the Federal Rules of Civil Procedure, a money judgment is

enforced in a federal court by means of a writ of execution, unless the court directs

7

otherwise.  The execution of final judgments is governed by Rule 69(a) of the

Federal Rules of Civil Procedure, which provides:

> (1) <u>Money Judgment; Applicable Procedure</u>.  A money judgment is enforced by a writ of execution, unless the court directs otherwise. <u>The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies</u>.

> <u>Obtaining Discovery</u>.  In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a) (emphasis added).  This rule builds into federal-court

judgment-enforcement proceedings the substantive and procedural safeguards

found in state law where the federal court is located, except to the extent a federal

statute might apply.  <u>See</u> <u>Lewis v. United Joint Venture</u>, 691 F.3d 835, 839–40 (6th

Cir. 2012).  Therefore, in the absence of any applicable federal law to the contrary,

Amron's post-judgment enforcement proceedings must comply with Texas law as

this Court sits in the San Antonio Division in the Western District of Texas.  <u>Id.</u>;

<u>accord</u> <u>Andrews v. Broadway, Exp. Inc.</u>, 473 F.3d 565, 568 (5th Cir. 2006).

In Texas, the procedure for obtaining a writ of execution is governed

by Texas Rules of Civil Procedure 621 through 656.  An application for an

issuance of a writ of execution is first made to the Clerk of the Court.  Tex. R. Civ.

P. 622.  Then, the Clerk issues the writ, directing any sheriff or constable within

the State of Texas to carry out the command of the writ by levy on certain property of the judgment debtor that is not exempt by law within thirty, sixty, or ninety days, whichever number of days the judgment creditor designates.  Id.  The writ shall require the officer executing it to comply with its terms, shall describe the judgment to be enforced, and must be signed by the Clerk.  Tex. R. Civ. P. 629.

For a Writ of Execution to sell real property, certain additional procedural safeguards must be met.  At the outset, the levying officer is first required to ask the judgment debtor to designate property on which the execution can be levied.  Tex. R. Civ. P. 637.  If the judgment debtor fails to designate property, then the levying officer may levy on any non-exempt[2] property of the judgment debtor.  Id.  After the property designation, the levying officer shall advertise notice of the time and place of sale of non-exempt real estate under execution once a week for the three consecutive weeks preceding the sale in a newspaper published in the county in which the property is located.  Tex. R. Civ. P. 647.  The notice of sale "shall contain a statement of authority by virtue of which the sale is to be made, the time of levy, and the time and place of sale; it shall also contain a brief description of the property to be sold."  Id.  In addition to newspaper publication, the officer making the levy shall give the defendant written notice of such sale, either in person or by mail.  Id.

---

[2] Homesteads are exempt under the Texas Constitution.  See Tex. Const. Art. VII, § 22 (1845).

9

After giving notice, the levying officer shall execute the Writ by endorsement.  Tex. R. Civ. P. 639; see also Gordon v. W. Hous. Trees, Ltd., 352 S.W.3d 32, 39 (Tex. App. 2010) (explaining that an officer levies on the property described in the writ of execution, usually in the case of real property, by endorsing the writ).  The endorsement shall state when the property was levied and describes the property levied with sufficient certainty to identify it.  Tex. R. Civ. P. 654; see also Goggans v. Green, 165 S.W.2d 928, 929 (Tex. Civ. App. 1942) (describing the sufficiency of description).  Then, the property shall be sold at public auction at the courthouse door of the county on the first Tuesday of the month between 10 a.m. and 4 p.m.  Tex. R. Civ. P. 631; Tex. R. Civ. P. 646a. After the levying officer carries out the Writ, including the public sale of the real property seized by the Writ, he or she is required to "make due return of the execution, in writing and signed by him officially, stating concisely what such officer has done in pursuance of the requirements of the writ and of the law."  Tex. R. Civ. P. 654.

Federal law for enforcing a judgment through a Writ of Execution differentiates from the Texas procedure in two ways.  First, instead of a sheriff or constable being responsible for levying the Writ, a U.S. Marshal, or his or her deputy, carries out the Writ to enforce a court's judgment.  28 U.S.C. § 566(c) ("Except as otherwise provided by law or Rule of Procedure, the United States

10

Marshals Service <u>shall execute all lawful writs</u>, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties." (emphasis added)); <u>see also</u> <u>id.</u> § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law.").

Second, unlike Texas law, which only requires advertising notice of the pending sale in a newspaper once a week for three weeks, federal law requires that before a public sale of realty can be made to satisfy a judgment, notice must be published "once a week for at least <u>four</u> weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated."  28 U.S.C. § 2002 (emphasis added).

Therefore, pursuant to Federal Rule of Civil Procedure 69, Texas Rules of Civil Procedure 621 through 659, and 28 U.S.C. §§ 2001–2002, the U.S. Marshals Service is not required to personally serve Sadik with a Writ of Execution for Money Judgment before pursuing a Writ of Execution for Seizure of Property before levying the Writ of Execution on the Sage Meadow.  Following Texas Rule of Civil Procedure 647 and 28 U.S.C. § 2002, it is sufficient to

11

advertise notice of the pending seizure of the Sage Meadow Property in a Bexar County newspaper once a week for at least four weeks and mail a copy of such notice to all four of Sadik's known addresses before seizing the Sage Meadow Property.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Amron's Motion for Levy of Execution and Order of Sale of Real Property (Dkt. # 4.)

The Clerk of the United States District Court for the Western District of Texas **SHALL ISSUE A WRIT OF EXECUTION** for the sale of the property located at

> LOT 28, BLOCK 42, NEW CITY BLOCK 18279, FOSTER MEADOWS SUBDIVISION, UNIT 14-B, A MANUFACTURED HOME SUBDIVISION, AN ADDITION TO THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 9556, PAGE 76, DEED AND PLAT RECORDS, BEXAR COUNTY, TEXAS.

commonly known as 3543 Sage Meadow, San Antonio, Texas 78222, and such proceeds are to be applied to the judgment rendered and registered in this cause.

The Court **ORDERS** the Western District of Texas Marshals Service to issue and effectuate a Writ of Execution for Seizure of Assets as follows:

1.     The Clerk of the U.S. District Court for the Western District of Texas shall issue a writ of execution of which two certified copies shall be

12

provided to the U.S. Marshals Service with a copy of the form USM-285;

2.    Amron shall obtain a title report that is certified within thirty (30) days of the proposed sale and provide a list of lienholders on the property to the U.S. Marshals Service who shall then forward the Notice of Levy and Notice of Sale to any such lienholder identified;

3.    Amron shall deposit with the U.S. Marshals Service an amount to satisfy an estimate for the services to be provided in conjunction with execution of the writ and for the sale of the Property;

4.    Amron shall indemnify the U.S. Marshals Service as required by the U.S. Marshals Service for the sale of the Property;

5.    Amron shall perform an appraisal of the Property within thirty (30) days of seizure by the U.S. Marshals Service and provide a copy of the same to the U.S. Marshal;

6.    Amron shall prepare a Notice of Levy and a Notice of Sale and as applicable, coordinate with the U.S. Marshals Service for the mailing of same;

7.    Amron shall post such Notice of Levy and Notice of Sale in the designated area for public auctions of real property in Bexar County, Texas, in accordance with Texas Law;

8.   Amron shall send by certified mail a copy of the Notice of Levy and Notice of Sale to Sadik's four known addresses.

9.   The U.S. Marshals Service shall arrange for advertisement in a newspaper of general circulation of Bexar County, Texas, to be included in the newspaper once per week for four consecutive weeks;

10.  The U.S. Marshals Service shall sell the Property to the highest bidder at public auction accepting payment in only cash or certified funds on the first Tuesday of the month at the area designated by the Bexar County Commissioner for public sale of real property;

11.  The U.S. Marshals Service shall keep a record of the bidders at the sale and provide a copy of such record to Amron; and

12.  The U.S. Marshals Service shall tender funds received at the sale payable to Cersonsky, Rosen & Garcia, P.C. IOLTA and return the writ to this Court with the results of such execution in accordance with Federal Law.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, April 24, 2014.

_____
David Alan Ezra
Senior United States Distict Judge